

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00053-CR

DAVID SMITH                                                APPELLANT

V.

THE STATE OF TEXAS                                      STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
## TRIAL COURT NO. 1333660D

----------

## MEMORANDUM OPINION[1]

----------

Appellant David Smith appeals his conviction for possessing between four and two hundred grams of heroin.[2] He argues that the trial court erred by denying his motion to suppress because the warrant authorizing the search of his

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. § 481.115(a), (d) (West 2010).

residence was not supported by an affidavit establishing probable cause. We affirm.

## Background Facts

A grand jury indicted appellant with possessing between four and two hundred grams of heroin.[3] Before trial began, appellant filed a motion to suppress all evidence obtained from the search of his residence. He argued that the search violated his rights under federal and state law because it was not supported by probable cause. He also filed a motion to suppress evidence obtained through a search of his cell phone, which he likewise argued occurred without probable cause.

At the hearing on these motions, the State stipulated that appellant had an expectation of privacy in his residence and in his phone. Neither party opted to call witnesses to testify concerning the motions; rather, the trial court admitted and considered the search warrants for the residence and phone along with the affidavits supporting the search warrants. After hearing the parties' arguments about the legal significance of those documents, the trial court suppressed evidence obtained from appellant's phone but denied suppression of evidence obtained from his residence.

---

[3]The grand jury also indicted appellant with possessing while intending to deliver heroin. The State later waived this count of the indictment. The State also waived a sentence-enhancement allegation.

2

After the trial court's suppression rulings, appellant initially pled not guilty, and the trial court began conducting voir dire of a jury panel. During that stage of the trial, however, appellant pled guilty pursuant to a plea bargain. Following the plea bargain, the trial court convicted appellant and sentenced him to seven years' confinement. As part of the plea bargain, appellant retained the right to appeal the denial of his motion to suppress evidence obtained from his residence. The trial court certified appellant's right to appeal his conviction, and he brought this appeal.

**Motion to Suppress**

Appellant contends that the trial court erred by denying his motion to suppress evidence obtained from the search of his residence. He argues that the search warrant for the residence could not properly authorize the search because it was not supported by an affidavit that established probable cause.

We review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law. *Barnett v. State*, 469 S.W.3d 245, 250 (Tex. App.—Fort Worth 2015, pet. ref'd). While this appeal involves our examination of the trial court's ruling on appellant's motion to suppress, "it actually involves our secondary appellate review of the magistrate's probable-cause determination in issuing the search warrant, which is a similar, yet distinct, inquiry." *State v. Crawford*, 463 S.W.3d 923, 928 (Tex. App.—Fort Worth 2015, pet. ref'd) (op. on reh'g).

3

A search warrant cannot issue unless it is based on probable cause as determined from the four corners of a sworn affidavit. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 18.01(b) (West 2015) ("No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance."); *Crawford*, 463 S.W.3d at 928. Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate within the four corners of an affidavit, there is a fair probability or substantial chance that evidence of a specific crime will be found at a specific location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010); *Crawford*, 463 S.W.3d at 929; *see also* Tex. Code Crim. Proc. Ann. art. 18.01(c). Probable cause "does not require that, more likely than not, the item or items in question will be found at the specified location." *Flores*, 319 S.W.3d at 702. In determining probable cause, the magistrate may "interpret the probable cause affidavit in a non-technical, common-sense manner." *Id.*

When reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard in keeping with the constitutional preference for a warrant to determine whether the magistrate had a substantial basis for concluding that probable cause existed. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Flores*, 319 S.W.3d at 702 (stating that the magistrate's decision should "carry the day in doubtful or marginal cases"); *see Crawford*, 463 S.W.3d at 928 ("[W]e review the trial court's probable-cause determination de

4

novo, applying the same substantial-basis standard as the trial court."); *Whitemon v. State*, 460 S.W.3d 170, 174 (Tex. App.—Fort Worth 2015, pet. ref'd) ("We must defer to the magistrate's finding of probable cause if the affidavit demonstrates a substantial basis for his conclusion."); *Farhat v. State*, 337 S.W.3d 302, 306 (Tex. App.—Fort Worth 2011, pet. ref'd) ("No magical formula exists for determining whether an affidavit provides a substantial basis for a magistrate's probable cause determination."). The "substantial basis" standard is flexible and undemanding; it allows a magistrate to draw reasonable, commonsense inferences from the facts and circumstances contained in the affidavit. *Crawford*, 463 S.W.3d at 929.

Like the magistrate and the trial court, we should review the affidavit supporting the warrant in a commonsense, realistic manner. *Farhat*, 337 S.W.3d at 306; *Hogan v. State*, 329 S.W.3d 90, 94 (Tex. App.—Fort Worth 2010, no pet.) ("A reviewing court should not invalidate a warrant by interpreting the affidavit in a hypertechnical manner."). The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; instead, we focus on the combined logical force of facts that are in the affidavit. *Hogan*, 329 S.W.3d at 94; *see Nichols v. State*, 877 S.W.2d 494, 498 (Tex. App.—Fort Worth 1994, pet. ref'd) ("A warrant is not invalid merely because the officer failed to state the obvious.").

A Grand Prairie police officer signed the affidavit supporting the search warrant for appellant's residence. The police officer stated that he had been

employed as such for fourteen years and that he is assigned to investigate narcotics offenses by conducting undercover drug buys, managing confidential informants, and seeking search warrants in narcotics cases. After reciting other facts about his training and experience, including training in matters related to drug investigations, the officer wrote,

> Over the past seven weeks, your Affiant has met with [a] confidential informant . . . involving the sale of Heroin . . . from the Suspected Place.[4] During this investigation, the CI has provided information that has been proven to be credible, reliable[,] and accurate. The CI has also been proven to be familiar with the appearance, packaging[,] and amounts in which . . . Heroin is being sold from the Suspected Place. Within this time frame, the CI participated in several controlled purchases of Heroin from the listed Suspected Persons[5] at the Suspected Place.

> Within the past week, your Affiant met the CI at an undisclosed location in preparation for several controlled purchases of Heroin from the Suspected Persons at the Suspected Place. The CI was searched and found to be free of any illegal contraband before and after each buy during this investigation. Your Affiant provided the CI with U.S. currency . . . to make all purchases of Heroin from the Suspected Place. Upon arrival at the Suspected Place on multiple occasions, Your Affiant or other investigators were in position to observe the CI approach the Suspected Place. During the buys, the CI was able to contact and make purchases of Heroin from the Suspected Persons at the Suspected Place. During the most recent transactions, Heroin was sold from the inside of a detached garage . . . and also sold from inside the Suspected Place . . . .

---

[4]The police officer described the "Suspected Place" by giving an address and stating that it was a single-family dwelling that had burglar bars covering its windows.

[5]The police officer named appellant as "Suspected Person #1" and another male as "Suspected Person #2."

6

Within the past 24 [hours], the CI was present at the location [and] observed Suspected [Person] #1 in possession of suspected Heroin . . . . During the most recent time frame, the CI was searched again prior to going to the Suspected Place and found to be free of any narcotic contraband. The CI was given U.S. currency by your affiant to make the purchase. Both Suspected Persons were present at the Suspected Place once the CI arrived. During the transaction, . . . Suspected Person #1 directed Suspected Person #2 to a rear bedroom inside the Suspected Place to retrieve the suspected Heroin that was subsequently sold to the CI.

After the purchases, the CI contacted your Affiant away from the Suspected Place and produced quantities of suspected Heroin the CI purchased at the Suspected Place. During this investigation, the CI's purchases established that the Suspected Place is a location where Heroin is being sold by the Suspected Persons. Your Affiant took custody of the suspected Heroin from the CI on each purchase and conducted presumptive field tests . . . . All tests were presumptive positive for Heroin content.

Appellant contends that this language is insufficient to establish probable cause to search his residence for illegal narcotics because (1) it does not contain factual details that establish the basis of the unnamed confidential informant's reliability (such as details about the informant's history in working with the police or his familiarity with heroin), and the statements about the informant's reliability are therefore conclusory; (2) it states that when the informant left the residence, he was "free of any illegal contraband," which leads "to the inference that the informant did not buy drugs [at] the residence"; and (3) it does not establish that the police maintained visual contact on the informant to ensure that he did not make "unplanned detours" while going to or from the residence.

Relying on the court of criminal appeals's decision in *Moreno v. State*, the State argues that because the affidavit details several controlled purchases of

7

drugs made by the informant at the residence, particularized explanations about the informant's credibility before making the purchases were unnecessary. *See* 415 S.W.3d 284 (Tex. Crim. App. 2013). The State also contends that a fair reading of the affidavit establishes that the informant bought drugs at the residence.

In *Moreno*, the police suspected that Moreno was distributing drugs from his residence and set up a controlled purchase of drugs there. *Id.* at 285–86. An affidavit signed by a police officer described that controlled purchase as follows:

> Within the past 72 hours a confidential informant was able to make controlled purchase of suspected crack cocaine from said residence. During this operation I met with the confidential informant face to face. The confidential informant was searched prior to and after the controlled purchase. No narcotics or contraband [were] found on the confidential informant during these searches. Constant surveillance was maintained on the confidential informant during the transaction. The confidential informant made contact with an unknowing participant to purchase the crack cocaine[, and] the unknowing participant advised the confidential informant that he/she would have to go to said residence to pick up the crack cocaine [sic]. The surveillance team observed the unknowing participant leave the designated meet location and travel to said residence. The unknowing participant went into said residence and returned to his/her vehicle a few minutes later. The unknowing participant returned to the designated location and met with the confidential informant again and provided the confidential informant with the crack cocaine. The unknowing participant did not stop at any other location [while] travelling . . . to and from said residence. The unknowing participant was under constant visual surveillance. I took custody of the narcotics after the completion of the operation. I am able to recognize crack cocaine and other illicit and controlled substances.

*Id.* at 286.

Moreno argued that this affidavit was insufficient to establish probable cause because the unknowing participant—an "unidentified individual of unknown credibility and reliability"—bought the drugs. *Id.* The court of criminal appeals described the issue as being whether "a probable-cause affidavit describing a 'controlled purchase' performed by an individual whose credibility or reliability were unknown was sufficient to sustain a probable-cause determination." *Id.* at 288. The court held that the affidavit was sufficient because under the facts it described, including the police's "observations of the controlled purchase and the reasonable inferences therefrom," it was "reasonable for the magistrate to infer that the unknowing participant obtained the crack cocaine from [Moreno's] residence," and any previously-established reliability of the unknowing participant was not essential. *Id.*

We conclude that the reasoning in *Moreno* compels the same result here. Although the affidavit in this case does not detail facts to explain whether the informant was known to be credible or reliable before beginning the weeks-long investigation into drug distribution at appellant's residence, the affidavit nonetheless establishes a substantial basis for finding probable cause by detailing the observations of the police officers as the informant completed several drug purchases at the residence. *Cf. id.* (citing *Carrillo v. State*, 98 S.W.3d 789, 793 (Tex. App.—Amarillo 2003, pet. ref'd)).

Specifically, the affidavit states generally that within seven weeks of when the officer signed the affidavit, the informant had participated in "several"

9

controlled purchases, and the affidavit explains in more specific detail how the informant had made such purchases within a day before the affidavit's execution. Concerning the more recent timeframe, the affidavit states that the police searched the confidential informant before he made the controlled purchase to ensure that he did not already possess drugs; that the police gave him money; that officers were in a position to watch him approach the residence; and that he left the residence, met with the police, and produced heroin that he had bought there. We conclude that these facts provided a substantial basis for the magistrate to find probable cause for a search of the residence. *See id.*; *Whitemon*, 460 S.W.3d at 174–75; *see also Ford v. State*, 179 S.W.3d 203, 206–07, 212–13 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding that there was probable cause to search an apartment when the affidavit stated that an informant was searched for drugs before making a controlled drug purchase, was given money to purchase the drugs, and bought a cigarette dipped in PCP), *cert. denied*, 549 U.S. 922 (2006). The circumstances of a controlled purchase of drugs, standing alone, may provide probable cause to issue a warrant. *State v. Griggs*, 352 S.W.3d 297, 305 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see also Ramirez v. State*, No. 05-13-00608-CR, 2014 WL 3735290, at *2 (Tex. App.—Dallas July 28, 2014, no pet.) (mem. op., not designated for publication) (holding that an affidavit established probable cause on the basis of a controlled drug purchase even though it "did not contain any information about the informant's credibility"). We reject appellant's contention that the affidavit fails to

establish probable cause because it does not contain historical details concerning the confidential informant's reliability and credibility before the informant began making controlled drug purchases.[6]

We also reject appellant's argument that the affidavit implies that the informant did not buy heroin at the residence.[7] The affidavit states that the informant purchased heroin several times at the residence and "produced" it to the police, who field tested it and confirmed its content. Given these statements, the magistrate, interpreting the affidavit in a commonsense manner—*see Whitemon*, 460 S.W.3d at 174—could have reasonably construed the officer's description of the informant's being "free of any illegal contraband . . . after each buy" as referring to any contraband other than the heroin he had just purchased.[8]

---

[6]We note that the cases upon which appellant principally relies do not concern a controlled purchase of drugs by a confidential informant. *See State v. Huddleston*, 387 S.W.3d 33, 37–38 (Tex. App.—Texarkana 2012, pet. ref'd); *State v. Hill*, 299 S.W.3d 240, 244–45 (Tex. App.—Texarkana 2009, no pet.).

[7]Appellant contends,

[A]t no point does the affiant establish that the confidential informant actually obtained any contraband during the time period from that location. The affidavit actually states the opposite when it reveals that "within the past week" the CI was searched "before *and after* each buy" and he was "*free* of any illegal contraband" during each of those searches.

[8]As the State notes, the affidavit in *Moreno* contained similar language, expressing, "The confidential informant was searched prior to and after the controlled purchase. No narcotics or contraband [were] found on the confidential informant during these searches." 415 S.W.3d at 286.

Finally, we cannot agree with appellant's assertion that the affidavit fails to establish probable cause because the police failed to maintain visual contact with the informant during the controlled drug purchases. The affidavit states, "Upon arrival at the Suspected Place on multiple occasions, Your Affiant or other investigators were in position to observe the CI approach the Suspected Place." Considering this language in a commonsense manner, we conclude that the magistrate could have reasonably inferred that the police officers were in a position to watch and did watch the informant's approach of the residence. *See id.*; *see also State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) ("The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a 'substantial basis' for issuing the warrant.").

And although the affidavit does not express that the police watched the informant leave the residence, it is "not necessary that an officer maintain constant surveillance on an informant during a controlled buy to present a magistrate with sufficient facts to reasonably conclude that the object of the search would probably be on the premises at the time the warrant is executed." *Griggs*, 352 S.W.3d at 305; *see also Flores v. State*, No. 01-11-00908-CR, 2012 WL 4741312, at *5 (Tex. App.—Houston [1st Dist.] Oct. 4, 2012, no pet.) (mem. op., not designated for publication) (affirming the denial of a motion to suppress although the officer did not monitor the confidential informant at all times); *Orlando v. State*, No. 14-06-00912-CR, 2008 WL 1795028, at *4 (Tex. App.—

12

Houston [14th Dist.] Apr. 22, 2008, no pet.) (mem. op., not designated for publication) (holding that an affidavit established probable cause for the search of a residence although it did not "indicate that the affiant observed the informant either enter or leave the townhome, or that he otherwise maintained constant surveillance of the townhome during the entire time of the controlled buy"). Here, although the affidavit does not express that the police maintained constant surveillance on the informant, the magistrate had a substantial basis to find probable cause from the statements and inferences establishing that on several occasions within the previous week, the informant had been searched before going to the residence, had been found to be free of illegal contraband, had been provided with money, had been monitored as he approached the residence, and had produced heroin to police officers after leaving the residence.

For all of these reasons, based on the facts contained in the four corners of the affidavit and on reasonable inferences drawn from those facts, we hold that the magistrate had a substantial basis for determining that probable cause existed to search appellant's residence. *See McLain*, 337 S.W.3d at 271. Thus, we conclude that the trial court did not err by overruling appellant's motion to suppress the evidence found in his residence, and we overrule his only issue.

## Conclusion

Having overruled appellant's only issue, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 3, 2015

14